**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IN THE MATTER OF:<br>Keri Diodato,<br>　　　　　Debtor.<br>Frances Fantasia,<br>　　　　　Appellant,<br>v.<br>Keri Diodato and Michael Diodato,<br>　　　　　Appellee. | No. CV-22-01335-PHX-DWL<br>BK NO. 2:19-bk-09775-EPB<br>ADV NO. Adv. No. 2:21-ap-00114-EPB<br>ADV NO. Adv. No. 2:22-ap-00015-EPB |

## INTRODUCTION

Frances A. Fantasia ("Appellant") is the estranged mother of Keri Diodato ("Debtor"). In 2017, Appellant sued Debtor in Massachusetts state court, asserting various tort theories, but Debtor then filed for bankruptcy in Arizona in 2019, identifying Appellant as her primary creditor. This filing had the effect of staying the Massachusetts litigation. Appellant, in turn, filed a motion to lift the bankruptcy stay so the Massachusetts litigation could continue, and the bankruptcy court granted that request in January 2020. However, in March 2021—over 13 months later—Debtor moved for reconsideration, arguing that the Massachusetts litigation was proceeding more slowly than anticipated and that the most efficient course of action would be to resume litigating in bankruptcy court. Over Appellant's objection, the bankruptcy court granted the motion for reconsideration.

Appellant did not appeal at that time and instead proceeded to litigate in bankruptcy court. Finally, after over a year of such litigation, the bankruptcy proceedings ended and Appellant filed this appeal.

The argument Appellant presents here is narrow—she contends the bankruptcy court lacked authority to grant the motion for reconsideration because Debtor was effectively seeking relief under Rule 60(b)(1), which is governed by a one-year deadline, and Debtor's motion was filed after the expiration of that deadline. In response, Debtor argues that it is Appellant who should be barred from seeking relief due to untimeliness, because the order granting reconsideration was a collateral order as to which Appellant had an immediate right of appeal (which Appellant lost by failing to file a timely notice of appeal). Alternatively, Debtor defends the bankruptcy court's decision on the merits, arguing that her request was not untimely because it arose under Rule 60(b)(6), which does not have a one-year deadline.

For the following reasons, the Court concludes that although it has jurisdiction over this appeal, Appellant's challenge fails on the merits. Accordingly, the bankruptcy court's decision is affirmed.[1]

**BACKGROUND**

The facts set forth below are derived from the parties' briefs and other documents in the record.

On August 19, 2011, Appellant, as grantor, executed the Frances A. Fantasia Irrevocable Trust ("Trust") and named Debtor as trustee. (Doc. 5-3 at 1-2.) According to the terms of the Trust, Debtor is also the "sole beneficiary of the Trust." (Doc. 5-5 at 2; Doc. 6-4 at 17.) The Trust owned "a Massachusetts corporation called Reading, Inc." and had one asset, "a commercial building" owned and operated by Reading, Inc. (Doc. 5-3 at 2.) Appellant named Debtor the "President, Treasurer, Secretary, CEO, CFO, and Director of Reading, Inc." (Doc. 5-3 at 2; Doc. 6-4 at 18.)

On October 2, 2017, Appellant filed suit in Massachusetts state court ("State Court

---

[1] Appellant's request for oral argument is denied because the issues are fully briefed and oral argument will not aid the decisional process. *See* LRCiv 7.2(f).

Proceeding"), asserting claims against Debtor and her then-husband Dr. Michael Diodato ("Dr. Diodato") (collectively, "Appellees") "for breach of fiduciary duty, conversion, breach of trust, fraud and misrepresentation, intentional infliction of emotional distress, and promissory estoppel." (Doc. 5-3 at 3.) The claims arose from a series of actions allegedly taken by Appellees with respect to management of the Trust in which they "wrongfully used the trust for the unauthorized personal benefit of both [Debtor] and her then-husband, [Dr.] Diodato." (Doc. 5 at 5, citing Doc. 5-3 at 3.)

On August 6, 2019, Debtor filed a Chapter 13 case in the United States Bankruptcy Court for the District of Arizona. (Doc. 5-8 at 2.)[2] This bankruptcy filing resulted in an automatic stay of the State Court Proceeding. (Doc. 5-3 at 1 [discussing "the automatic stay of 11 U.S.C. § 362(a)"].)

On October 2, 2019, Appellant filed "an objection to the Debtor's Chapter 13 and a Motion to Dismiss" in bankruptcy court. (Doc. 5 at 6.)

On October 15, 2019, Appellant filed a $1.8 million proof of claim in bankruptcy court, raising the same claims as in the State Court Proceeding. (Doc. 6-3 at 2-3.)

On November 6, 2019, Debtor objected to Appellant's proof of claim. (*Id.* at 3.)

On November 21, 2019, Appellant filed a motion entitled "Motion For Stay Relief And For Court To Abstain From Adjudicating [Appellant's] Claims." (Doc. 5-3.) The motion asked the bankruptcy court to "grant her relief from all applicable stays" with respect to the State Court Proceeding and to abstain from adjudicating the claims arising from the State Court Proceeding. (*Id.* at 1-2.)

On December 5, 2019, Debtor filed an opposition to Appellant's motion, arguing that the bankruptcy court should not allow Appellant's claims to be litigated in the State Court Proceeding in light of the delays and inefficiency in that forum. (Doc. 5-5.) Among other things, Debtor argued that the "State Court Case is not close to trial due to [Appellant's] failure to comply with her discovery obligations." (*Id.* at 11, capitalization omitted.) Regarding inefficiency, Debtor asserted that the "bankruptcy court is the most

---

[2] The case was later converted to a Chapter 7 proceeding. (Doc. 5 at 5 n.1.)

- 3 -

expeditious forum to resolve claims instead of the typically backed-up state court dockets." (*Id.* at 12.)

On December 17, 2019, the bankruptcy court held a preliminary hearing on the motion. (Doc. 5-4.) During the hearing, the bankruptcy court weighed various factors. On the one hand, the court noted that the State Court Proceeding was "further along" than the bankruptcy proceeding, involved "state court issues," and could provide a jury trial, all of which favored abstention and lifting the stay. (*Id.* at 11.) On the other hand, the court noted that the efficiency, speed, and issue-preclusive effect of trying the case in bankruptcy court weighed in favor of maintaining the stay. (*Id.* at 19-20.)

On January 21, 2020, the bankruptcy court issued a "minute entry/order" granting Appellant's motion. (Doc. 5-6.) The bankruptcy court balanced factors under 28 U.S.C. § 1334(c)(1) and concluded that the balancing analysis favored abstention and lifting the stay, with the "most compelling" reason being "that the [State Court Proceeding] has been proceeding for more than two years." (*Id.* at 3-5.) However, the bankruptcy court acknowledged that one factor weighing against abstention was that "[p]resumably, [the bankruptcy court] could hear this case at least as quickly as the Massachusetts court, if not more quickly." (*Id.* at 3-4.)

On February 6, 2020, the bankruptcy court issued a final order with respect to Appellant's motion. (Doc. 5-7.) This order simply memorialized the relief discussed in the January 21, 2020 minute entry/order. (*Id.*)

On February 4, 2021, Appellant and Appellees appeared remotely in the State Court Proceeding for a Rule 12 hearing, at which point the Massachusetts court offered the parties a tentative trial date of November 29, 2021 as "a backup to a medical case" and a firm trial date of November 28, 2022. (Doc. 5-8 at 93-96.)

On March 2, 2021, Debtor filed a motion for reconsideration of the February 2020 order lifting the stay and authorizing abstention. (Doc. 6-3.) At the outset, Debtor stated that she was seeking relief under Bankruptcy Rule 9024 and Federal Rule of Civil Procedure 60(b)(6). (*Id.* at 1 & n.1.) On the merits, Debtor argued that "[n]ew information

from the Massachusetts State Court establishes there will be excessive, protracted delay in the State Court Litigation." (*Id.* at 1.) Debtor clarified that she was "not asking for a second chance to relitigate the abstention factors, but instead [was] asking the Court to reconsider the Abstention Order based on equitable grounds considering the new and recent information signaling that a trial in the State Court Litigation cannot be held until at least November 28, 2022." (*Id.* at 2.) Elsewhere in the motion, Debtor included a quotation from the transcript of the recent hearing in the State Court Proceeding in which the Massachusetts judge explained that the delay was due in part to "the status of trials in the Commonwealth as we now come out of the pandemic." (*Id.* at 4.) Debtor concluded that "[t]he extensive trial delay in State Court no longer supports this Court from abstaining." (*Id.* at 6.)

On March 17, 2021, Appellant filed an opposition to the reconsideration motion. (Doc. 5-9.) In the course of raising many of the same arguments raised in this appeal, Appellant acknowledged that "no one will dispute that a worldwide pandemic is the primary cause of the delay" and accused Debtor of attempting "to take advantage of the pandemic and the resulting slowdown of civil litigation to get another bite at the apple." (*Id.* at 2, 3.)

On March 18, 2021, the bankruptcy court held an accelerated hearing. (Doc. 5-2.) During the hearing, Appellant's counsel again seemed to acknowledge that the COVID pandemic qualified as an unexpected development that had contributed to the delay in the State Court Proceedings: "This abstention order occurred over a year ago. I am not—of course nobody knew that the pandemic was going to cause a kind of delay. We didn't even know really that there was going to be a shutdown when you entered in that order. So I'm not saying that this stuff was necessarily something that we all knew . . . ." (*Id.* at 7.) Meanwhile, the bankruptcy court stated as follows:

> A key basis for the decision made a little more than a year ago was the belief that . . . Massachusetts was an efficient forum to resolve this party's dispute in a relatively short period of time. Whether that was viable or not, that's not . . . true now.

- 5 -

(*Id.* at 8.) In a related vein, the bankruptcy court later made the following statement:

> [T]he original order . . . was based upon the belief that there was an efficient way to resolve these parties' important disputes in state court.  It now—due to probably no fault of anyone, it turns out that belief was incorrect.  And that as importantly there is no ability for the parties to resolve their disputes within a reasonable time as reflected by the record I have before me.

(*Id.* at 27.)  The bankruptcy court thus concluded that because the State Court Proceeding would not occur "until at the earliest in November 2022," whereas the bankruptcy case could finish "[b]y the end of April," the appropriate outcome was to "grant the motion to reconsider" and reinstate the stay as to the State Court Proceeding.  (*Id.* at 8-9, 27.)

That same day (*i.e.*, March 18, 2021), the bankruptcy court entered a minute entry summarizing the arguments from the hearing and granting Debtor's motion to reconsider.  (Doc. 5-10.)  That minute entry also provided that the bankruptcy court needed to take additional steps to evaluate Appellant's "523" complaint.  (*Id.* at 3-4.)[3]

On April 23, 2021, Appellant "filed an adversary alleging non-dischargeability."  (Doc. 5 at 10.)

On January 24, 2022, Appellant filed "a second adversary. . . also alleging additional non-dischargeability claims that became applicable when [Debtor] converted her case to Chapter 7."  (*Id.*)  The adversary proceedings "were consolidated on January 24, 2022 . . . and the trial on all the issues concluded on May 21, 2022."  (*Id.*)

On July 25, 2022, the bankruptcy court "enter[ed] final judgement in favor of [Appellees] on all counts of [Appellant's] complaint."  (Doc. 1 at 13.)

On August 8, 2022, Appellant filed a notice of appeal.  (Doc. 5-1.)

On October 4, 2022, Appellant filed an opening brief.  (Doc. 5.)

On October 18, 2022, Appellees filed a response brief.  (Doc. 6.)

On November 1, 2022, Appellant filed a reply brief.  (Doc. 7.)

…

---

[3]   Section 523(a)(2)(A) of the Bankruptcy Code provides an exception from the discharge of any debt for money, property, or services to the extent such debt was obtained by false pretenses, a false representation, or actual fraud.  11 U.S.C. § 523(a)(2)(A).

- 6 -

**DISCUSSION**

I.  Standard Of Review

Under 28 U.S.C. § 158(a)(1), district courts "have jurisdiction to hear appeals . . . from final judgments, orders, and decrees . . . of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title." In such appeals, "[t]he bankruptcy court's conclusions of law, including its interpretation of the Bankruptcy Code, are reviewed de novo and its factual findings are reviewed for clear error." *In re Int'l Fibercom, Inc.*, 503 F.3d 933, 940 (9th Cir. 2007) (citing *In re Salazar*, 430 F.3d 992, 994 (9th Cir. 2005)).

As relevant here, a bankruptcy judge's order granting a Rule 60(b)(6) motion is reviewed for abuse of discretion. *In re Nations First Capital, LLC*, 851 F. App'x 32, 33 (9th Cir. 2021). *See also In re JTS Corp.*, 617 F.3d 1102, 1109 (9th Cir. 2010) ("[The Ninth Circuit] appl[ies] the same standard of review applied by the district court."). "We cannot reverse on this ground unless we have a definite and firm conviction that the bankruptcy court committed a clear error of judgment in the conclusion it reached after weighing the relevant factors." *In re Gould*, 401 B.R. 415, 429 (B.A.P. 9th Cir. 2009), *aff'd*, 603 F.3d 1100 (9th Cir. 2010) (citing *In re McGee*, 359 B.R. 764, 769-70 (B.A.P. 9th Cir. 2006)). "However, a bankruptcy court necessarily abuses its discretion if it bases its decision on an erroneous view of the law or clearly erroneous factual findings." *Id.* "Absent such abuse, the court will not set aside the disallowance, or, conversely, the allowance." *In re Petersen*, 437 B.R. 858, 864 (D. Ariz. 2010) (cleaned up).

II.  Timeliness Of Appeal

   A.  **The Parties' Arguments**

As a threshold matter, Appellees argue that this Court lacks jurisdiction because Appellant's notice of appeal was untimely. (Doc. 6 at 4-7.) According to Appellees, the March 18, 2021 minute entry qualified as a collateral order—and, thus, Appellant had an immediate right to appeal from that order—in light of the criteria set forth in *In re GACN, Inc.*, 555 B.R. 684 (B.A.P. 9th Cir. 2016), and *In re Gen. Carriers Corp.*, 258 B.R. 181

(B.A.P. 9th Cir. 2001). (*Id.*) Appellees contend that because Appellant did not immediately file a notice of appeal following the issuance of that minute entry, but instead waited to file a notice of appeal until August 8, 2022, this appeal is time-barred. (*Id.*)

In response, Appellant argues that the collateral order exception only applies when there is not a "commenced or . . . pending" adversary proceeding and "[h]ere, there was a pending adversary, because the Bankruptcy Court had ordered for an adversary to be filed and a new scheduling order to be entered and all the parties knew that the adversary was merely a matter of time." (Doc. 7 at 4-5, citations omitted.) Additionally or alternatively, Appellant argues that the collateral order exception only applies when there are no active matters before the bankruptcy court, and here "[a]s of March 18, 2021, there was a pending objection to the proof of claim, and a pending objection to the chapter 13 plan." (*Id.* at 5-6.) Appellant further argues that "[b]y the time the Rule 60 Order was 'entered,' there was also an adversary proceeding filed." (*Id.* at 6.) As to this point, Appellant elaborates that because the March 18, 2021 minute entry was not signed or mailed to counsel, it does not qualify as the sort of final order that might trigger a right of appeal. (*Id.* at 6-7.) Appellant contends this ruling only became "final" 150 days after it was issued, as set forth in Rule 58(b)(2)(B), and by that point an adversary proceeding was pending. (*Id.*)

B.   **Analysis**

Generally, "a notice of appeal must be filed with the bankruptcy clerk within 14 days after entry of the judgment, order, or decree being appealed." Fed. R. Bankr. P. 8002. One type of order that might trigger Rule 8002 is a "final order," which is an order with "some dispositive language sufficient to put the losing party on notice that his entire action—and not just a particular motion or proceeding within the action—is over and that his next step is to appeal." *In re Brown*, 484 F.3d 1116, 1120-21 (9th Cir. 2007) (emphasis omitted). Additionally, "certain orders which do not end the litigation are reviewable immediately under the 'collateral order' exception to the finality rule." *Gen. Carriers*, 258 B.R. at 186-87 (citing *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 712 (1996)). To implicate the collateral order exception, an order must "(1) determine conclusively the

disputed issue that is completely separable from the merits of the action; (2) effectively . . . be unreviewable on appeal from a final judgment; and (3) [be] too important to be denied review." *Id.*

In *General Carriers*, the United States Bankruptcy Appellate Panel of the Ninth Circuit ("BAP") concluded that a bankruptcy court's order denying a motion for abstention was final or, at a minimum, was subject to the collateral order exception. *Id.* at 186. The facts of *General Carriers* were quite unusual. There, a debtor filed a Chapter 7 proceeding in 1992 and the case was closed in 1995. *Id.* at 184-85. However, in 1996, the bankruptcy court reopened the case at the request of Marshack, the then-current Chapter 7 trustee, so Marshack could file an adversary proceeding to pursue some $900,000 in fraudulent transfer claims. *Id.* at 185. After the bankruptcy court rejected those claims, the case was again closed. *Id.* Nevertheless, several years later, by which point Marshack had been replaced by Krasnoff as the trustee, Krasnoff—without seeking leave from the bankruptcy court—filed a state-court action against Marshack, under the theory that Marshack had acted negligently in failing to prevail in the earlier adversary proceeding. *Id.* Krasnoff then "filed a motion for abstention[] in the bankruptcy court." *Id.* After the bankruptcy court denied the abstention request, Krasnoff appealed. *Id.*

The BAP began by addressing *sua sponte* whether it had jurisdiction over Kransnoff's appeal, including whether the order denying abstention was a final or collateral order. *Id.* at 186-87. On the one hand, the BAP noted that "[s]everal bankruptcy opinions have held that an order denying abstention, which is rendered in a proceeding in bankruptcy court, is neither final nor subject to the collateral order exception because it will be reviewable when the action is thereby concluded on the merits." *Id.* at 187 (citations omitted). On the other hand, the BAP stated that "[t]he order here is distinguishable" because "[t]here was no concurrent proceeding in bankruptcy court." *Id.* In large part "due to the nonexistence of an action filed in bankruptcy court," the BAP concluded that "the order before us meets the tests for finality under § 158(a) and, alternatively, for 'finality' under the collateral order doctrine." *Id.*

- 9 -

Fifteen years later, in *GACN*, the BAP again addressed whether a bankruptcy court's order denying abstention should be considered a final or collateral order. As with *General Carriers*, the facts of *GACN* were convoluted and unusual. There, GACN (an entity that owned and operated a restaurant) filed for Chapter 11 bankruptcy in August 2014 after a $5.6 million judgment was entered against it in a state-court lawsuit. *GACN*, 555 B.R. at 688. Several months later, in February 2015, GACN filed a state-court lawsuit against its insurance company and the law firm that had represented it in the previous lawsuit. *Id.* Meanwhile, GACN also negotiated a settlement with some of its creditors in the bankruptcy action. *Id.* at 689. This prompted the insurer to file an answer in the state-court lawsuit asserting the affirmative defense that because GACN failed to obtain the insurer's consent before negotiating the settlement with the creditors, GACN was "barred . . . from any recovery on its state court complaint." *Id.* GACN, in turn, filed an adversary proceeding in bankruptcy court seeking a declaration regarding the insurer's refusal to approve the settlement. *Id.* at 689-90. The insurer, in turn, "moved the bankruptcy court to abstain from hearing GACN's declaratory relief action." *Id.* at 690. After the bankruptcy court denied the motion, the insurer immediately appealed. *Id.*

On appeal, the BAP began by addressing whether the order denying abstention was immediately appealable as a final order or pursuant to the collateral order exception. *Id.* It concluded the order was not immediately appealable because "there is a pending adversary proceeding, and the insurer could seek review of the abstention order upon the final resolution of that adversary proceeding. Thus, the collateral order doctrine does not apply in this instance." *Id.* at 691. The BAP also explained that these details distinguished the case from *General Carriers*, because there "no adversary proceeding had been commenced or was pending. As a result, the order on appeal satisfied the second collateral order doctrine requirement of being effectively unreviewable on appeal from a final judgment or order, because there was no pending adversary proceeding to finally resolve." *Id.*[4]

---

[4] Although not relevant to the analysis here, it is notable that despite concluding the insurer's appeal was premature, the BAP proceeded to "grant the insurer leave to pursue

With this backdrop in mind, the Court has little trouble concluding that the March 18, 2021 minute entry was not immediately appealable pursuant to the collateral order exception. The one case that Debtor has identified in which an order denying abstention was deemed to be immediately appealable, *General Carriers*, involved a unique set of facts—the trustee filed the abstention motion even though there was no case pending before the bankruptcy court. Under those unusual circumstances, the BAP concluded that the order denying the abstention motion was immediately appealable, in part because there was no underlying case that should be allowed to come to completion before the trustee could pursue its appellate rights. *General Carriers*, 258 B.R. at 187 ("due to the nonexistence of an action filed in bankruptcy court," "the order before us meets the tests for finality under § 158(a) and, alternatively, for 'finality' under the collateral order doctrine"). Indeed, the BAP in *General Carriers* went on to conclude that the bankruptcy court lacked jurisdiction to issue the order denying abstention due to the absence of a pending case. *Id.* at 191 ("In the case at bar, the bankruptcy court determined that it could use its discretion to deny abstention . . . even though there was no proceeding before it. In other words, the bankruptcy court essentially said: 'If anyone asks me to hear the merits of this matter that is now at the state court, I will have the jurisdiction to do so. Does anyone want me to hear it?' Such a decision was beyond the scope of the bankruptcy court's jurisdiction."). The BAP in *General Carriers* also acknowledged that the usual rule is that "an order denying abstention, which is rendered in a proceeding in bankruptcy court, is neither final nor subject to the collateral order exception because it will be reviewable when the action is thereby concluded on the merits" and cited "[s]everal bankruptcy opinions" reaching that conclusion. *Id.* at 187. That was the essential conclusion reached in *GACN*, albeit under slightly different facts than this case—there, the BAP concluded that because "there [was] a pending adversary proceeding, and the insurer could seek review of the abstention order upon the final resolution of that adversary proceeding," "the collateral order doctrine does not apply in this instance." *GACN*, 555 B.R. at 691. The bottom line is that bankruptcy

---

this interlocutory appeal" and resolve the appeal on the merits. *Id.* at 692.

courts ordinarily do not treat orders denying abstention as collateral orders subject to immediate appeal, absent unusual circumstances that were not present here. Accordingly, Appellant's notice of appeal was not untimely.

III.     Jurisdiction Over Dr. Diodato

   A.     **The Parties' Arguments**

Appellees also raise another threshold jurisdictional issue—they argue that the Court "must preserve the binding effect of the Bankruptcy Court's ruling on the claims against Appellee Dr. Diodato" because the Court lacks jurisdiction over Dr. Diodato. (Doc. 6 at 7.) According to Appellees, the lack of jurisdiction arises "because the Bankruptcy Court's jurisdiction over Dr. Diodato was not created by the Motion for Reconsideration or the Motion to Abstain," but rather by Dr. Diodato's consent to the bankruptcy court's jurisdiction. (*Id.*, citations omitted.) Appellees contend that the "transcript [of the March 30, 2021 hearing] shows that Dr. Diodato consented on the record to the jurisdiction of the [bankruptcy] court" even though he did not sign a stipulated order to that effect as the bankruptcy court requested. (*Id.* at 8, citing Doc. 6-2 at 10-11.) Appellees conclude that because Appellant "appealed the motion for reconsideration, which Dr. Diodato did not join . . . any ruling in favor of [Appellant] should specifically exclude and preserve the ruling Dr. Diodato achieved in bankruptcy court." (*Id.* at 9.)

In response, Appellant argues that "[Debtor's] argument is contrary to law and should be disregarded" because Appellant interprets Debtor's argument "to imply that any person can consent to the jurisdiction of the bankruptcy court, whether their case is related to a bankruptcy case or not." (Doc. 7 at 12.)

   B.     **Analysis**

Bankruptcy courts "constitute a unit of the district court." 28 U.S.C. § 151. *See, e.g.*, *In re Poole*, 222 F.3d 618, 619-23 (9th Cir. 2000) (because "[t]he bankruptcy courts are, of course, units of the district courts," an attorney admitted to appear in front of Arizona federal district courts can appear in Arizona bankruptcy courts). As a result, "jurisdiction and authority over bankruptcies has been vested, from the beginning of the

*Republic*, in the federal district courts." *In re Gruntz*, 202 F.3d 1074, 1080 (9th Cir. 2000) (citations omitted). Among other things, district courts "have jurisdiction to hear appeals . . . from final judgments, orders, and decrees . . . of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title." 28 U.S.C. § 158(a)(1).

The issue is whether the Court has jurisdiction over Dr. Diodato given that he consented to the bankruptcy court's jurisdiction but did not join Debtor's motion for reconsideration, the motion that is the subject of this appeal. The short answer is yes. Generously interpreted, "[t]he logical implication of [Appellees'] arguments is that a finding of bankruptcy court jurisdiction somehow divests this Court of subject matter jurisdiction." *Best W. Int'l Inc. v. Paradise Hosp. Inc.*, 2014 WL 4209246, *3 (D. Ariz. 2014). Appellees cite no case law to support this proposition. Further, as Appellant correctly notes, "Debtor cites no authority for the argument that consent is the only element required for jurisdiction in a bankruptcy court." (Doc. 7 at 12.)

Because bankruptcy courts "constitute a unit of the district court," 28 U.S.C. § 151, when Dr. Diodato consented to the jurisdiction of the bankruptcy court (Doc. 5-2 at 34-36; Doc. 6-2 at 10-11), he also consented to the jurisdiction of this Court over appeals from the bankruptcy court. Similarly, Dr. Diodato's failure to join Debtor's motion to reconsider (Doc. 6-3) does not impact the Court's jurisdiction over this appeal.

IV.   Merits

  A.   **The Parties' Arguments**

Appellant argues that Debtor's motion for reconsideration was only cognizable under Rule 60(b)(1) because "[a]lthough the bankruptcy judge did not state under which section of Rule 60(b) he was granting relief in the Rule 60 Order, he stated that the Original Order was based on a misconception that 'there was an efficient way for the parties to resolve the disputes in state court.'" (Doc. 5 at 12, citation omitted.) Thus, Appellant asserts that the bankruptcy judge "made an error of fact when he thought that the Lawsuit would run slower in Massachusetts than in Arizona, but still run quickly enough for his

preferences. By his own account, the bankruptcy judge was wrong, or mistaken, in this regard." (*Id.*) According to Appellant, "this 'incorrect belief' was a mistake made by the bankruptcy judge, pure and simple," as defined in Rule 60(b)(1). (*Id.*) Appellant concludes that because the motion was a request for relief under Rule 60(b)(1), the bankruptcy court lacked authority to grant it, as the motion "was not filed until 13 months had passed" and Rule 60(b)(1) imposes a one-year time limit. (*Id.* at 12-14.) Finally, Appellant contends that Appellees can't invoke Rule 60(b)(6)—which, unlike Rule 60(b)(1), isn't subject to a specific time limit—as a basis for upholding the bankruptcy court's ruling, both because a Rule 60(b)(6) is applicable only when the other provisions of Rule 60(b) are inapplicable and because Rule 60(b)(6) only authorizes relief under "extraordinary circumstances" and "to prevent manifest injustice," neither of which was present here. (*Id.* at 14-17.)

Appellees respond that Appellant's timing argument lacks merit because there was no starting point from which to measure Rule 60(b)(1)'s 12-month time limit, as "[t]here is nothing in the record where the Bankruptcy Court establishes any kind of timeline for the Massachusetts case to be done." (Doc. 6 at 10.) Appellees also contend that "[t]here are four core elements to this [Original] Order. . . . Those are 'belief', 'efficient way', 'belief was incorrect', and 'reasonable time.'" (*Id.*) Describing these terms as "objectively unmeasurable" because they "are based on the judge's own personal standards," Appellees argue that "they create an impossibility for the Appellee to seek relief under Rule 60(b)(1) within 12 months. There are just no measurable quantities." (*Id.* at 10-11.) In a related vein, Appellees argue that "there is no allegation that the Appellee asked the Bankruptcy Court to reconsider the Abstention ruling because of a mistake by the Bankruptcy Court." (*Id.* at 11.) Appellees contend that "the point of the motion was not about a 'mistake made by the [Bankruptcy] Court' (and if it were, there was not a mistake, but a simple change of opinion)." (*Id.* at 12.) Appellees also contend that they "came to the [Bankruptcy] Court because of a change in circumstances, ordinary circumstances of Massachusetts court processes, to extraordinary circumstances after Covid." (*Id.*) Appellees conclude that the reconsideration motion should be characterized as a request for relief under Rule 60(b)(6),

rather than Rule 60(b)(1), because it was based on "the extraordinary circumstances of Covid," which "cause[d] the original order for abstention to be reserved" and qualified as "a change in circumstances." (*Id.* at 13-14.)

In reply, Appellant argues that Appellees' theory lacks merit because it "impli[es] that final orders should be read differently depending on whether the court was using objective or subjective standards" and there are no "cases to support the distinction between orders that are based upon a judge's subjective standards or an objective standard." (Doc. 7 at 8-9.) Appellant further contends that Appellees have effectively conceded that one of the requirements of Rule 60(b)(6)—*i.e.*, "extraordinary circumstances"—was not present, because "[a] 'simple change of opinion' based entirely upon 'no measurable quantities' and 'subjective standards' is not an extraordinary circumstance that would merit relief from a final order." (*Id.* at 10.) Finally, Appellant contends that Appellees' reference to COVID is unavailing because Appellees do "not explain how COVID made a timely filing impossible considering the pandemic and delays caused by the pandemic were well known to Debtor and discussed by her counsel before the 12-month deadline to file a Rule 60(b)(1) motion expired." (*Id.*)

B. **Analysis**

"Federal Rule of Civil Procedure 60(b) permits 'a party to seek relief from a final judgment, and request reopening of his case, under a limited set of circumstances.'" *Kemp v. United States*, 142 S. Ct. 1856, 1861 (2022) (citing *Gonzalez v. Crosby*, 545 U.S. 524, 528 (2005)). "Under Rule 60(b)(1), a party may seek relief based on 'mistake, inadvertence, surprise, or excusable neglect.' Rules 60(b)(2) through (b)(5) supply other grounds for reopening a judgment. Finally, Rule 60(b)(6) provides a catchall for 'any other reason that justifies relief.' This last option is available only when Rules 60(b)(1) through (b)(5) are inapplicable." *Id.*

The dispute here turns on whether the reconsideration motion sought to correct a "mistake," in which event it should have been characterized as a Rule 60(b)(1) motion. The Supreme Court has interpreted "mistake" in this context to include not only a party's

errors, but also "a judge's . . . errors." *Id.* at 1862. In *Kemp*, the Supreme Court concluded that "mistake" encompasses "any 'misconception,' 'misunderstanding,' or 'fault in opinion or judgment'" as well as "errors 'of law or fact'." *Id.* at 1856, 1862-63 (citations omitted).

When determining which provision of Rule 60(b) a reconsideration motion implicates, a reviewing court must undertake a fact-intensive analysis that includes evaluating the language of the motion and the parties' and judge's actions and considering, but not treating as dispositive, the subdivision of Rule 60(b) the movant invoked. *See, e.g.*, *id.* at 1860 ("Kemp invoked Rule 60(b)(6), but his motion arguably sought reopening based on a kind of 'mistake' covered by Rule 60(b)(1)."); *Zeleny v. Burge*, 2022 WL 18284878, *4 n.4 (C.D. Cal. 2022) ("Although Plaintiff does not specify what part(s) of Rule 60(b) he brings this Motion under, the Court assumes that it is brought pursuant to Rule 60(b)(1) and 60(b)(6) as Rules 60(b)(2) – (5) are plainly inapplicable.").

The Ninth Circuit has yet to apply *Kemp*'s refinement of "mistake" under Rule 60(b)(1), but other courts have. For example, in *Justus v. Clarke*, 78 F.4th 97 (4th Cir. 2023), one of the disputed issues was "whether Justus's Rule 60(b) motion," which "only . . . appear[ed] to invoke" Rule 60(b)(6), should have been characterized as a Rule 60(b)(1) motion and thus deemed "time-barred." *Id.* at 104-06, 104 n.3. Clarke argued that the motion should be characterized as a Rule 60(b)(1) motion because it functionally sought relief based on a "mistake" by the judge, but the Fourth Circuit rejected this argument. The court emphasized that Justus did not "state [in the motion] that the district court 'erred'" and "[a] careful reading of [the] motion demonstrates that it is not a statement intended to establish any error on the part of the court." *Id.* at 108-09. The court also emphasized that the motion did not claim that the district court made an "error based on the record before it," "overlook[ed] a material argument," or misapplied "controlling law to record facts." *Id.* (citations omitted). To the contrary, the court noted that the request was based on a new fact—Justus's mental illness—that was not part of the record at the time of the original ruling. *Id.* at 109 ("Justus . . . did not move for Rule 60(b) relief on the ground that the district court made a mistake . . . [because] the court's ruling was not error based on the

record before it, which alleged no facts related to Justus's mental illness.").

In contrast, in *Schrubb v. Blakenship*, 2022 WL 3971054 (C.D. Cal. 2022), *appeal dismissed*, 2023 WL 2369387 (9th Cir. 2023), the movant filed a Rule 60(b)(6) motion claiming "that Covid-related circumstances, as well as his failure to review or, in fact, even remember the existence of this case for almost three years, equate to extraordinary circumstances." *Id.* at *3. However, in evaluating the language of the motion, the district court concluded that the movant was effectively seeking relief because of a judicial error, not because of COVID-related circumstances, and thus the motion was functionally a Rule 60(b)(1) motion that was time-barred. *Id.*

This case falls somewhere between *Justus* and *Schrubb*. On the one hand, although Debtor's motion (like the motion in *Justus*) specifically referenced Rule 60(b)(6), Debtor's motion also (and unlike the motion in *Justus*) used language that seemed to suggest Debtor was seeking relief due to judicial error:

> [S]ince the Abstention Order was decided under the *erroneous presumption* that the State Court [Proceeding] would proceed to resolution in a reasonable amount of time, which we know now to be false, reconsideration should be granted under Bankruptcy Rule 9024 and [the bankruptcy court] should not hear the State Court [Proceeding].

(Doc. 6-3 at 10, emphasis added.) Similarly, when explaining why it was granting the motion, the bankruptcy court noted that its earlier ruling was premised on a "belief [that] was *incorrect*." (Doc. 5-2 at 27, emphasis added.) Correcting "an erroneous presumption" and an "incorrect" belief would seem to qualify as "establish[ing] . . . error on the part of the court," which in turn would implicate Rule 60(b)(1). *Justus*, 78 F.4th at 109. *See also Kemp*, 142 S. Ct. at 1862 (for Rule 60(b)(1) purposes, a "mistake" includes a "fault in opinion or judgment").

On the other hand, one of the underlying bases for the reconsideration request was that an unexpected post-ruling development, the COVID-19 pandemic, had caused excessive delays in the Massachusetts state court system that warranted reconsideration of the abstention factors. (Doc. 6-3 at 1-2, 4.) Although this argument was articulated with

less than ideal precision in the motion itself, the motion did clarify that Debtor was seeking relief due to "[n]ew information." (*Id.* at 1.) Additionally, Appellant's opposition brief and the transcript from the hearing on the reconsideration request both reveal that Appellant understood the request to be based in part on this consideration. (Doc. 5-9 at 2-3 [acknowledging that "no one will dispute that a worldwide pandemic is the primary cause of the delay" and accusing Debtor of attempting "to take advantage of the pandemic and the resulting slowdown of civil litigation to get another bite at the apple"]; Doc. 5-2 at 7 ["This abstention order occurred over a year ago. I am not—of course nobody knew that the pandemic was going to cause a kind of delay. We didn't even know really that there was going to be a shutdown when you entered in that order. So I'm not saying that this stuff was necessarily something that we all knew . . . ."].) Similarly, although the bankruptcy judge did not use the words "COVID" or "pandemic" when explaining the basis for the ruling, the judge seemed to be alluding to the pandemic when explaining that "due to probably no fault of anyone, it turns out that belief [that there was an efficient way to resolve these parties' important disputes in state court] was incorrect." (Doc. 5-2 at 27.) Finally, although not dispositive, the transcript of the hearing reveals that the bankruptcy judge understood the motion as arising under Rule 60(b)(6) and specifically concluded that Debtor had satisfied the "high burden" for relief under that provision. (*Id.* at 11 [in response to Appellant's counsel's statement that the motion should be denied "especially in light of the high burden that they have to meet to do a motion for reconsideration under 60(b)6," the court stated "I think that may have been met here"].)

All of this suggests that the request for reconsideration was not, in fact, an effort to correct a "mistake" the bankruptcy judge had made when granting Appellant's original abstention request. Instead, the request was based at least in part on an unexpected development—the COVID-19 pandemic—that was not part of the record at the time of the original ruling. It was not an abuse of discretion for the bankruptcy judge to construe such a request as arising under Rule 60(b)(6), not Rule 60(b)(1). *Justus*, 78 F.4th at 109 ("Justus . . . did not move for Rule 60(b) relief on the ground that the district court made a mistake

. . . [because] the court's ruling was not error based on the record before it, which alleged no facts related to Justus's mental illness."). This conclusion, in turn, means the motion was not time-barred pursuant to Rule 60(b)(1)'s one-year limitation period, as that deadline does not apply to Rule 60(b)(6) motions. *Kemp*, 142 S. Ct. at 1861 ("Motions under Rule 60(b)(6) are not subject to th[e] additional 1-year constraint.") (citation omitted).

Appellant's final argument is that, even assuming the motion was not untimely, it should have been denied on the merits under Rule 60(b)(6). (Doc. 5 at 15-17.) This argument again lacks merit. "Rule 60(b)(6) provides a catchall for 'any other reason that justifies relief' . . . [but] extraordinary circumstances must justify reopening." *Kemp*, 142 S. Ct. at 1861 (cleaned up). *See also United States v. Alpine Land & Reservoir Co.*, 984 F.2d 1047, 1049 (9th Cir. 1993) ("Rule 60(b)(6) has been used sparingly as an equitable remedy to prevent manifest injustice. The rule is to be utilized only where extraordinary circumstances prevented a party from taking timely action to prevent or correct an erroneous judgment."). It was not an abuse of discretion for the bankruptcy court to conclude that the COVID-19 pandemic, and the attendant delays it caused in state-court litigation, was an extraordinary circumstance that warranted reconsidering the abstention and stay factors. *Cf. United States v. Carrilllo-Villa*, 451 F. Supp. 3d 257, 259-60 (S.D.N.Y. 2020) ("[A] number of recent cases from the Southern District of California have found that extraordinary circumstances were demonstrated as a result of the COVID-19 epidemic. . . . The same circumstances exist in the district."). Nor was it an abuse of discretion for the bankruptcy court to conclude that relief was necessary to prevent manifest injustice. *In re Gould*, 401 B.R. at 429 ("We cannot reverse on this ground unless we have a definite and firm conviction that the bankruptcy court committed a clear error of judgment in the conclusion it reached after weighing the relevant factors.").

…

…

…

…

Accordingly,

**IT IS ORDERED** that the bankruptcy court's decision is **affirmed**. The Clerk shall enter judgment accordingly and terminate this action.

Dated this 19th day of September, 2023.

Dominic W. Lanza
United States District Judge